24-4100 NetChoice v. Brown. Council for appellant if you'd make your appearance and proceed please. Thank you your honor. May it please the court Aaron Middleton representing Attorney General Derek Brown and Division Director Catherine Haas. I'll collectively refer to both of them this morning as the state. This appeal is about whether the definition of social media in Utah's Minor Protection and Social Media Act is content neutral. The district court incorrectly concluded that it is not and because of that error it applied the wrong level of scrutiny to the entire act. This court should reverse that determination and the resulting injunction and remand for the application of intermediate scrutiny. Turning first to the content neutrality decision the district court's holding that the act central coverage definition is content-based was wrong. A law is content neutral when it does not discriminate based on the topic or message discussed or as Reagan said when it is agnostic as to content. That is so here. The act does not differentiate excuse me the definition does not differentiate between any topic message or purpose discussed. It applies no matter what appears on a platform site. Rather than regulating content the definition is instead designed to determine whether a platform contains certain structural features just as Turner applied to cable companies of a size and Reagan applied based off of the location of signs. The district court focused on one particular element of the definition in its content-based holding and that is whether or not a platform allows users to interact socially within that platform. The court focused on the interact socially phrase in particular. That focus on that phrase was wrong. That is not a the fact that a site allows users to interact with each other within the platform. It does not regulate speech of any type of content message or purpose. The District of Florida recently looked at a similar law to determine whether or not it was content neutral and I believe it got it right in the Oothmeyer case. Counsel excuse me do we have enough in the record to make a determination of what's content neutral and what's not? I believe the court has enough on the record to make a content neutrality determination and that's a legal conclusion we've got. Don't we have to do that on all the different platforms? Well certainly let me clarify my answer. To the extent the court is just looking at whether or not the definition is content neutral I believe there's enough in the record to make content neutrality determination on that. But I think the Your Honor is right that once that determination is made that that definition is content neutral that just opens the door for further inquiry because NetChoice has challenged several different provisions under the Act and for each of those provisions I think the court would have to look at those provisions to determine whether or not they satisfy content neutrality and if so what level and then to apply the appropriate level of scrutiny. So I do think there are ultimately that has not been done. The district court has not made those determinations. It's holding was based entirely on the definitions and because the definition it said was content-based it then applied strict scrutiny to everything without breaking it up into the individual challenges and conducting the facial analysis to determine what level of scrutiny applied and then if so determining weighing their constitutional applications against any unconstitutional applications and then weighing them against the rest. So I think all of that would have to be done by the district court which is why we are just asking on this appeal for the court to make a determination on whether the definition is content neutral and then to remand back to the district court so that those further proceedings can be held there for it to make those many determinations on the first instance. Are you saying that there's just one issue to be decided whether the definition is content neutral or not? Yes. How can you possibly do that given all the different platforms and the just the whole spectrum of platforms it seems to me has to has to be examined. Well I think that's true to determine whether or not the act is unconstitutional whether or not it fails whatever level of scrutiny is applied but I think as far as determining whether or not the definition is itself content neutral I think that that can be done based off of the text of the statute. Let me understand a question ask a question about the operation of the statute. As I understand it limits the visibility of minor accounts. In your view could a minor receive a friend request from an account with which it was not connected? Yes in our view a minor could receive a friend request from an account with which it is not connected. Just that minor's account name or handle as it's sometimes called can't appear in the mass search and indexing function of a site so a stranger couldn't say I want to see all Aaron Middleton's in Salt Lake and have that show up but if the requester knew my exact handle then they would be able to send a friend request and I could accept that request a minor could accept that request without parental consent but again I think that goes to a separate question that goes back to one of the individual provisions of the act and is a separate consideration from whether or not the act is content neutral by the best definition is content neutral which is no I I understand that I was just trying to understand more broadly how the act function and so I get that go ahead please and so looking at the district courts ruling on socially interact it it's ruled that that distinguishes websites based off of content but as I think when I started to answer judge Kelly's question that is not a content based as a characteristic because social speech can be on any conceivable topic message or idea and the act applies the same way in that way it is very much like the Reagan case where yes you do maybe do have to look at the site or the platform to determine whether this it has this functional functional capability to allow peer-to-peer or social speech but beyond that there needs to be no sort of parsing out to determine what types of things are discussed so that should satisfy that satisfies the definition of satisfies content neutrality excuse me next choice is also on appeal argued that the act is not content neutral because it one of the other elements of the definition is that it regulates sites that display a list of users with whom the account holders share a connection with system like that for the same reason as the socially interact or the interact socially language is also a content neutral functional qualifier within the statute that you look to see does the platform have this feature enabled and if so there need be no further assessment of that it again is very much like looking at the signs and Reagan to determine whether they are on or off-premises and then the third one just no just pause hit pause button and explain that a little more what is what is it that they're claiming is content neutral in that situation and why is it not right and so one of the elements of the definition is that it applies to a site well under the definition a platform must meet all five of these those is the interact socially element that the district court focused on net choice on appeal has been also looked at a separate element within that definition which is whether it displays a list of users within the site with whom the with whom the account holder shares a connection so just whether that list is displayed so okay we're using social media parlance like a your friend list is maybe a more quickly colloquial way to explain that and and it does not display your friend list if the act does not have the feature to display that list of connected accounts then then it does not meet the definition of social media within the act so it looks at whether the action is functional that functional capability capability enabled to display a list of users but it looks beyond that or a list of connected users for the content of that list and if it does have the ability if the entity involved does display a list of connected socially users that is one criterion under which it falls under the act right so if it satisfies yes that that goes against whether or not the definition covers the entity at all as separate from the issue your honor was asking about earlier as far as the default privacy settings correct but if I'm understanding correctly they're saying that the fact that that that that is an element of content based activity that that the that the act would target entities that display the list of connected users is that right yes they're arguing that that the definitions seeing our identification as that as one of the structural features that entity must satisfy that they argued that that does make it content-based okay and you're saying it's not why why I think this is very much like again the Reagan distinctions that it goes to whether or not a platform has that functional element or a structure to display a list of connected accounts so you do have to read the content just like you had to read the sign in Reagan to determine whether it was on or off site but beyond that looking to see if it was there there is no content analysis that's required it applies the same regardless of the nature of types of entities or persons on that list there's no sort of topic message purpose discrimination there it's just does it display a list of connected accounts or not and that's the only only thing to look at I think it is it is like the off-premises on-premises distinction in Reagan but it's a list of accounts of people I mean off-premises on-premises is it seems strikes me as it could be viewed as a distinction with the difference between whether this particular entity displays a list of people who are socially connected I mean why isn't there some content overlay to that people I mean it could be anything that any person or entity that has set up to be another account holder it looks to whether or not the site has allows them to be connected within the site and then displays a list of their connections it does not reflect any sort of content discrimination as far as message topic or idea it simply looks to whether or not there's a function enabled of does it allow a display of a list or not well I mean that well my question did focus on people and as it relates to people what I'm saying is why isn't there some content dimension associated with whether you were displaying a list of people who are my friends or not I mean why isn't there a content dimension to that well you're regulating whether that entity can do that or not right it applies to an entity that does have that function enabled whether or not and it says whether they're connected within the system so I don't think that's necessarily limited to friends it's whether or not they share a connection within okay well they're connected within the system okay I know I'm slow here but I'm trying to but help me to understand the point and the point is they're connected within the system they could be they could be people they could be entities but the point is why isn't there a content overlay that you're trying to regulate because that particular entity chooses to display those people or entities with which I am connected so give me the answer the slow version for why that's not a problem okay well I think again because it goes to whether or not just that functional capability isn't able that's not about discriminating between different subjects or messages or treating content differently it's just about does the structure to allow this. Wait a minute I mean that's not necessarily binary I mean the idea that oh it's functional or it's content based those aren't necessarily binary I mean you could have a situation where you choose to functionally have you know say functionally I'm going to capture within my system any entity that displays certain content so those two things aren't binary they I mean they could there's a there's a situation where you could have functional structures in place that actually capture content so what I'm trying to ask you is why isn't this one of them? That's true I mean a function could be a purpose or could be discriminatory based off what Reagan said but here it is not based off of the message or topic discussed it only is about does the act have the functional structure to enable the display of this list it's not about any sort of discriminatory treatment based off of topic or message it just looks to what functional criteria and structural criteria does a site have with that I'd like to reserve my remaining time for rebuttal if that's all right yes counsel may it please the court Scott Keller for net choice Utah's social media law violates the First Amendment in at least five ways first this is a content-based restriction on billions of posts of fully protected speech second the parental consent requirement violates the Supreme Court's holding in third the age assurance provision imposes a barrier on every Utah citizen including adults to access these billions of posts of fully protected speech that violates the Supreme Court's free speech coalition decision fourth the notifications ban is a doubly content-based speech restriction and fifth the display prohibitions banning autoplay and seamless pagination violate moody which recognized the First Amendment protects websites decisions about how to display speech let me start with our argument of why this is a content-based speech restriction and Chief Judge Holmes I think you're exactly right particularly before you agree with before you agree with me mr. Keller a it struck it strikes me that what brings us here on appeal is a much more limited issue than these five things that you're articulating I mean those are specific provisions within the act as I understand it and the hard work of deciding whether specific provisions in the act or content neutral or not is not necessarily what we're here to talk about now I is and you can correct me clearly when I finish this statement but as I understood it the district court basically said that the definition of social media company is a definition that infects the entire act with content they you know in a impermissibly content-based way and therefore in what what the state of Utah says is no no no no no that's not true and so now we're on appeal dealing with that one sort of limited question and let's let's assume I'm not saying that's going to be the case but let's assume that Utah prevails what you will be able to argue all the rest of this stuff in the district court at provision by provision then that at my conception of what we're doing here explain to me why that's wrong yeah I don't think that that is the only thing that district court held here was hey this is content-based I'm done the district court had to apply Titan First Amendment scrutiny and yes it did apply strict scrutiny and the state concedes here a strict scrutiny applies we win and so we have joined argument here with the state on we believe these provisions fail even intermediate scrutiny for many of the same reasons that the district court articulated under the strict scrutiny analysis I mean yes but let me let me let me hit the pause button for a second yes the court did apply the strict scrutiny and and and and condemn the act to in that way to being unconstitutional but I guess what I'm getting at is it one decisional path that I see being invoked by Utah is simply that threshold determination that the that that definitional structure was content-based which therefore infused the entire statute as being unconstitutional on when the court applied strict scrutiny that that threshold determination was wrong and that in and then the question would be as I understand it should we engage on intermediate scrutiny here so I so I could see that there could be two decisional things to do here but I'm saying but what I'm get trying to get at is that isn't necessarily what we have to decide I'll stop there please go ahead judge hope that first of all we do believe that this is content-based and I'm happy to get into that but even if you assume that we're wrong I mean we have both both sides have briefed up whether these provisions fail or satisfy intermediate scrutiny for instance I don't know how the state can get around the holding of Brown that the state quote power to prevent children from hearing or saying anything without their parents prior consent unquote and I realize that the district court here rightly found strict scrutiny applied because it was a content-based law but that's not the only provision of Brown that we rely on the district courts heightened scrutiny analysis repeatedly relies on Brown to show why this law is both wildly under inclusive wildly over inclusive and also the fact that these websites provide parental tools whether they're at the device level the router level the website level the application level also this law sweeps in could I stop for a quick second I I understand I understand the virtues of efficiency and and and and it would be nice to wrap this thing up but but I mean judge Shelby is a smart guy and and why not if we were to say Utah should prevail why shouldn't we let judge Shelby the deal with these issues of intermediate scrutiny and in the first instance and and you know maybe you'll win down there on everything I mean why not let it play out that way well a few reasons first of all we do believe this is content-based but we also don't want to be in a position where we're having to run back and immediately go do preliminary injunctive proceedings anew but but let me let me tackle the content can I interrupt just really quickly on that on the issue of sending it back to judge Shelby if we were to go that route did you read judge Shelby's opinion in I don't remember the footnote maybe 26 as actually perhaps making a ruling on the on the intermediate scrutiny the court basically said that nothing was given to the court regarding from Utah regarding what supported the legislation in the first place essentially and that this wouldn't even meet intermediate scrutiny how did you interpret that footnote yeah I think there are all sorts of parts of this opinion including that where all of those holdings were made and this is why when the court says he didn't say it was an alternative holding it just was sort of a bit of a stray comment I wondered what your interpretation was yeah I mean and the same goes to age assurance that you know this burdens all adults not just minors and the District Court rightfully said this sweeps in much more a burden substantially more speech than would be necessary and you know strict scrutiny intermediate scrutiny are both heightened First Amendment scrutiny with teeth I mean as this court has said even under intermediate scrutiny you need a close fit between the ends and the means it still requires narrow tailoring regulating speech is supposed to be the last resort not the first resort now I do think the easiest way that this court can resolve all of this right now though is by finding that this is a content-based restriction of speech I think it's at least for two reasons first the coverage definition sweeps in websites that allow users to interact socially not just interact but interact socially and second whether a website is covered depends on do they provide a list of other account holders that are connections and judge Holmes I do believe that this is absolutely content-based you have to go look at the website if the website lists those connected users it's covered if it doesn't then it doesn't satisfy that it wouldn't be covered yeah I think it doesn't tell you it doesn't tell you anything about it doesn't have any characteristic associated with the users it doesn't they could be any kind of users having anything to they could be vendors they could be individuals that could be friends so why is it necessarily content-based just because it instrumentally addresses users well I think you're still examining what is the substantive content the speech that is on the website is there a list of users or not but also I think all of this goes to Utah is essentially trying to exempt professional speech and we also know this from the exemptions this this law exempts email it exempts cloud storage it exempts document collaboration all of those would be professional speech and I think the Western District of Texas and the Southern District of Ohio and the CCIA versus PACS in the US decisions did get it right and finding that these are content-based restrictions and let me hit the button let me let me hit the pause button for a second I mean on this notion of restricting professional speech I take it that that the the Facebook's of this world would be captured by this provision right by this act yes a lot of people do business on Facebook a lot of people do you know and when I'm trying to focus on whether this thing is content-based what I'm thinking about is that they're all sorts of content on the internet and there's all sorts of content that would be within the context of Facebook let's just use that example I mean where is the content restriction when you could have the every flower blooming on the internet and you can have every flower blooming on Facebook I mean what where's the content discrimination there including the business patent part because I mean I know there's some entities that's the only place they do business is on things like Facebook so where is the where's the discrimination there well I think it would be the other types of services that would have these same you know online server whether it's autoplay and pagination we've given examples of how this is over inclusive and under inclusive that you know it covers dream with which is just about creative writing even though they don't use autoplay and seamless pagination but then services like ESPN and Disney Plus and Hulu and Spotify and the New York Times are not covered even though they would use that also I think the district court was completely correct here that the state hasn't even tried to show a direct causal link in the harm that they purport to allege but I'm focusing on the definitional aspect now the socially aspect which I thought we were talking about and the notion of whether that's sorted by content and what I was trying to get at is you can you can talk about anything socially one two that the entities that are captured within and without this act both appear to be engaging in the same sort of speech I mean so in other words you know the notion does it excludes the Internet well the Internet is doing all sorts of content that in this what's covered they're doing all sorts of content they could talk politics they could talk sports they could talk business within the scope of the act too so why is it targeting anything well so I think first of all it's not just interaction it's interact socially and I think the word socially has to have some meaning in this statute or else it would be superfluous now we submit meaning it tell me what meaning it has that distinguishes it between let's say I leave a comment on the New York Times Facebook page or I leave a comment on ABC News I know would have a Facebook page and I leave a comment on there I'm angry about blah blah blah I mean I'm interacting with with ABC right well I believe it's interacting with you know each other as in the other users on the website but look I think if there's any about this I don't think you can hold that against the websites you know the state has to draw a law with sufficient specificity and so it's not just interaction but also to judge Holmes even if we go the other direction and say well there's a bunch of other websites that allow the same thing but those aren't covered I think that's just a huge tailoring flaw for this law on the statement I know that doesn't necessarily go to strict scrutiny versus intermediate scrutiny but it does go to heighten First Amendment scrutiny under whatever standard applies and I think that's why the Supreme Court in Hackingham and in Moody said those laws and those provisions challenged they sustain those challenges even under intermediate scrutiny saying we didn't have to get to strict scrutiny because the laws wouldn't survive even the lower form of intermediate scrutiny and we know from that and that goes and that goes to whether you win if even under a circumstance where Judge Shelby was wrong initially and that's the threshold question it seems to me that we're called upon to decide is whether whether this definitional content-based dissemination was wrong right yeah I do think it's content-based because the distinction between professional speech or news or entertainment if you disagree on that though I would also submit that the Supreme Court has made clear this is asking questions I'm not agreeing or disagreeing with anything right now but can you can you can I interrupt just to make sure is there anything besides what you just said which is that it distinguishes but on based on not just interacting but interacting socially is there anything besides that that really makes or breaks your argument for it with that it's a content-based restriction the second would be the displaying the list the third would be reading this all in context I think the exemptions of email cloud and document collaboration I think that bolsters our argument that what interact socially is trying to get at is making a distinction of professional speech versus social interaction those are the three and yet professional speech can also be you know I mean you can make professional speech on any of these these social website media websites right I think the best way to read interact socially is that's what the state and the law was trying to get at and we know this isn't just interaction I mean there are all sorts of ways of course to interact this is interact socially but even if your honors disagree with everything I just said it pages 37 to 50 of our brief we have given all of the alternative basis to affirm on the individual provisions this is the parental consent provision squarely foreclosed closed by Brown the age assurance provision targets billions of posts a fully protected speech the notifications provision says that websites can't engage in their own speech the autoplay and seamless pagination bands directly infringe the editorial judgments of how to display speech and I think the district court was correct here this isn't like a moody situation where there's a dispute among the parties over what is covered by this law and the defendant concedes that at least intermediate scrutiny applies and so these laws are going to raise the same First Amendment issues in every application and this is a law that is doubly narrow in that it targets social media companies operating social media services so this is not like moody where the court said well we don't know about direct messaging we don't know about ride-sharing we don't know about payment services or online marketplaces or email all of those kinds of websites that moody flagged could have a different First Amendment analysis when you're talking about compelling more speech dissemination none of those are covered by this statute so there's no moody facial challenge problem and this law is unconstitutional in various ways I see my time is expired if there are any other questions thank you thank you counsel you have a little bit of time left I think miss Middleton yes just responding to net choices argument well sorry do I need to wait for the timer I'm sorry yeah I did I thought you did yeah I think I had okay 27 a huge 27 seconds okay good responding to net choices argument that they act exact or treats professional speech differently there's simply no basis in the act for that email cloud storage are very structurally different sites than a social media site and communications on either of them could be about anything so that's not a content-based and as far as Brown goes that's the case applying strict scrutiny and a content-based regulation this for those reasons the state would ask the court to reverse the district courts holding that it's content-based and its application of strict scrutiny and remand all right thank you counsel for your fine arguments cases submitted